WILLIAM J. GOINES (SBN: 61290)
goinesw@gtlaw.com
AMANDA D. DONSON (SBN: 300022)
donsona@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Defendants
Liquid Capital Exchange, Inc., BDB Capital, Inc.
(d/b/a Liquid Capital of Colorado)(erroneously sued
as Liquid Capital of Colorado), Sol Roter, an
Individual, and Bruce Dawson, an Individual

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| MARBLE BRIDGE FUNDING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIQUID CAPITAL EXCHANGE, INC., LIQUID CAPITAL OF COLORADO, SOL ROTER, AN INDIVIDUAL, AND BRUCE DAWSON, AN INDIVIDUAL, <br><br> Defendants. | Case No. CV15-00177-YGR <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO QUASH SERVICE OF PROCESS; MEMORANDUM OF POINT AND AUTHORITIES** <br><br> Date: March 10, 2015 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 1, 4th Floor <br> Judge: Hon. Yvonne Rogers |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF ISSUES | 3 |
| III. | BRIEF STATEMENT OF FACTS | 3 |
| IV. | ARGUMENT | 3 |
| | A. Roter, Dawson and BDB Capital Lack Sufficient Contacts with California to be Subject to General Jurisdiction | 4 |
| | B. There Is No Specific Jurisdiction Over Roter, Dawson and BDB Capital | 6 |
| |    1. Roter, Dawson and BDB Capital Have Not Purposefully Directed Their Activities in California Nor Purposefully Availed Themselves of Conducting Activities in California | 6 |
| |    2. Plaintiff's Claims Against Roter, Dawson and BDB Capital Did Not Arise from California-Related Activities | 8 |
| |    3. The Exercise of Jurisdiction Over Roter, Dawson and BDB Capital Would Be Unreasonable | 8 |
| |       (a) Extent of Roter, Dawson and BDB Capital's Purposeful Interjection into California | 9 |
| |       (b) The Burden Upon Roter, Dawson and BDB Capital Defending in California | 9 |
| |       (c) The Extent of the Conflict with a Foreign Sovereign | 10 |
| |       (d) California's Interest in Adjudicating the Dispute | 10 |
| |       (e) The Most Efficient Judicial Resolution of the Controversy | 11 |
| |       (f) The Availability of an Alternative Forum | 11 |
| |       (g) The Importance of California to Plaintiff's Interest in Convenient and Effective Relief | 11 |
| | C. Mr. Roter Has Not Been Properly Served Under the Hague Convention | 12 |
| V. | CONCLUSION | 12 |

i

NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO QUASH SERVICE OF PROCESS; MEMORANDUM OF POINT AND AUTHORITIES

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Asahi Metal Industry Co. v. Superior Court,*
 480 U.S. 102 (1987)...............................................................................................9, 10

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.,*
 223 F.3d 1082 (9th Cir. 2000) ..........................................................................5, 7, 8, 9

*BBK Tobacco & Foods LLP v. Juicy eJuice,*
 No. CV–13–00070–PHX–GMS, 2014 WL 1686842 (D. Ariz. April 29, 2014) ..............12

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462 (1985).....................................................................................................7, 9

*Calder v. Jones,*
 465 U.S. 783 (1984).........................................................................................................7

*Core-Vent Corp. v. Nobel Indus. AB,*
 11 F.3d 1482 (9th Cir. 1993) ..............................................................................9, 10, 11

*Data Disc, Inc. v. Systems Tech. Assocs.,*
 557 F.2d 1280 (9th Cir. 1977) ........................................................................................4

*Davis v. Metro Productions, Inc.,*
 885 F.2d 515 (9th Cir. 1989) ..........................................................................................5

*Fireman's Fund Ins. Co. v. National Bank of Cooperatives,*
 103 F.3d 888 (9th Cir. 1996) ..........................................................................................4

*Gordy v. Daily News L.P.,*
 95 F.3d 829 (9th Cir. 1996) ..........................................................................................10

*Gray & Co. v. Firstenberg Machinery Co., Inc.,*
 913 F.2d 758 (9th Cir. 1990) ..........................................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
 466 U.S. 408 (1984).........................................................................................................4

*Insurance Co. of N. Am. v. Marina Santa Cruz,*
 649 F.2d 1266 (9th Cir. 1981) ........................................................................................9

*International Shoe Co. v. Washington,*
 326 U.S. 310 (1945).........................................................................................................4

*McNutt v. General Motors Acceptance Corp. of Indiana,*
 298 U.S. 178 (1936).........................................................................................................3

*Mississippi Publ'g Corp. v. Murphree,*
 326 U.S. 438 (1946).......................................................................................................12

*Omni Capital Int'l Ltd. v. Rudol Wolff & Co., Ltd.,*
 484 U.S. 97 (1987).........................................................................................................12

*Panavision Int'l L.P. v. Toeppen,*
 141 F.3d 1316 (9th Cir. 1998) ........................................................................................8

*Pebble Beach Co. v. Caddy,*
 453 F.3d 1151 (9th Cir. 2006) ........................................................................................5

*Reebok Int'l Ltd. v. McLaughlin*,
　49 F.3d 1387 (9th Cir. 1995) ......................................................................... 6

*Rocke v. Canadian Auto. Sport Club*,
　660 F.2d 395 (9th Cir. 1981) ...................................................................... 10

*Roth v. Garcia Marquez*,
　942 F.2d 617 (9th Cir. 1991) ...................................................................... 11

*Schwarzenegger v. Ford Martin Motor Co.*,
　374 F.3d 797 (9th Cir. 2004) ........................................................................ 7

*Sher v. Johnson*,
　911 F.2d 1357 (9th Cir. 1990) ...................................................................... 4

*Sinatra v. National Enquirer, Inc.*,
　854 F.2d 1191 (9th Cir. 1988) .................................................................... 11

*World-Wide Volkswagen Corp. v. Woodson*,
　444 U.S. 286 (1980) ..................................................................................... 4

*Ziegler v. Indian River County*,
　64 F.3d 470 (9th Cir. 1995) .......................................................................... 3

**State Statutes**

Cal. Civ. Proc. Code § 410.10 ............................................................................. 4

**Federal Rules**

Federal Rule of Civil Procedure 4 ..................................................................... 12

Federal Rule of Civil Procedure 4(f) ................................................................. 12

Federal Rule of Civil Procedure 12(b)(2), (4) and (5) ........................................ 3

**TO PLAINTIFF AND TO ITS ATTORNEY OF RECORD:**

NOTICE IS HEREBY GIVEN that on March 10, 2015, at the hour of 2:00 p.m., or as soon as the matter may be heard in Courtroom 1, 4th Floor of the United States District Court located at 1301 Clay Street, Oakland, California, Defendants BDB Capital, Inc. (d/b/a Liquid Capital of Colorado)(erroneously sued as Liquid Capital of Colorado), Bruce Dawson and Sol Roter will move this court for an order (1) dismissing the Complaint against defendants Dawson, BDB Capital and Roter for lack of personal jurisdiction; and (2) quashing service of process upon Mr. Roter.

This motion is made on the grounds that defendants, Dawson and BDB Capital, as citizens of Colorado, and Roter, as a citizen of Canada, are not subject to the personal jurisdiction of California. Further, the service of process that Plaintiff claims to have effected upon Mr. Roter is insufficient under the Hague Convention.

This motion will be based on this notice and the accompanying Memorandum of Points and Authorities and Declarations of Sol Roter and Bruce Dawson filed concurrently herewith, and on such other and further argument and evidence which may be presented at the hearing on this motion.

DATED: January 20, 2015                     GREENBERG TAURIG, LLP


By /s/ *William J. Goines*
William J. Goines
Amanda D. Donson

Attorneys for Defendants Liquid Capital Exchange, Inc., BDB Capital, Inc. (d/b/a Liquid Capital of Colorado)(erroneously sued as Liquid Capital of Colorado), Sol Roter, an Individual, and Bruce Dawson, an Individual

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Marble Bridge Funding Group, Inc., a citizen of California, filed this lawsuit against Defendants BDB Capital, Inc. (d/b/a Liquid Capital of Colorado) (erroneously sued as Liquid Capital of Colorado) ("BDB Capital"), a citizen of Colorado; Bruce Dawson ("Dawson"), a citizen of Colorado and Sol Roter ("Roter"), a citizen of Canada. Plaintiff's Complaint purports to allege claims for (i) Aiding and Abetting Fraud, (ii) Fraud and Deceit – Intentional Misrepresentation, and (iii) Fraud and Deceit – Fraudulent Concealment. These purported claims stem from Plaintiff's payment to Liquid Capital Exchange, Inc. ("Exchange") of $270,000.00 in exchange for Exchange terminating its financing arrangements and security interest with Nature's Own Pharmacy, LLC, improperly identified in paragraph 25 of the complaint as "Nature's Own". A copy of the agreement between Exchange and Plaintiff (the "Buyout Agreement") is attached as **Exhibit A.**

The jurisdictional allegations contained in the Complaint conclusorily state:

> [a] substantial part of the events or omissions giving rise to the claims asserted herein took place in Contra Costa County. Plaintiff and Defendants, Liquid Capital Exchange and Liquid Capital of Colorado, entered into a contract executed in Contra Costa County.

Compl. ¶ 10.[1] The Complaint further alleges broadly that Dawson, Roter and BDB Capital's conduct giving rise to the Complaint occurred in Contra Costa County, California, and that Messrs. Roter and Dawson do business in California. Compl. ¶¶ 3-5.

These allegations are wholly insufficient to permit this Court to exercise personal jurisdiction over Roter, Dawson and BDB Capital. The accompanying declarations from Messrs. Roter and Dawson, individually and on behalf of BDB Capital, demonstrate these non-resident defendants (i) do not have "minimum contacts" with California; and (ii) they have not conducted any activity within the State of California that would justify subjecting them to personal jurisdiction in this State. Further, Plaintiff has failed to comply with the Hague Convention's requirements for service of process upon Mr. Roter. Thus, service should be quashed.

---

[1] Notably, Plaintiff fails to attach to the complaint a copy of the alleged contract, which gives rise to Plaintiff's alleged claims.

## II. STATEMENT OF ISSUES

Pursuant to Federal Rule of Civil Procedure 12(b)(2), (4) and (5), defendants Roter, Dawson and BDB Capital respectfully request this Court issue an order (i) dismissing the Complaint filed against each of them on the grounds that the Court lacks personal jurisdiction over them and (ii) quashing the service of process Plaintiff claims to have effected upon Mr. Roter.

## III. BRIEF STATEMENT OF FACTS

BDB Capital is incorporated in and has its principal place of business in the state of Colorado. BDB Capital does not conduct business in California. *See* Dawson Decl. ¶¶ 17, 19.

Defendant Dawson is the President of BDB Capital. Mr. Dawson resides in and is a citizen of Colorado. Dawson Decl. ¶ 1. Mr. Dawson does not personally conduct business in California, nor does he own any real or personal property in California. *See* Dawson Decl. ¶¶ 2, 4, 9.

Defendant Roter is the President of Defendant Exchange, Inc. Mr. Roter resides in and is a citizen of Canada. Roter Decl. ¶ 1. Mr. Roter does not personally conduct business in California, nor does he own any real or personal property in California. *See* Roter Decl. ¶¶ 2, 4, 9.

In its Complaint, Plaintiff broadly alleges Roter, Dawson, BDB Capital and Exchange participated in a fraudulent scheme whereby Plaintiff was induced by the defendants' alleged misrepresentations and omissions to purchase the invoices of a fraudulent company, Nature's Own.[2] *See* Compl. ¶¶ 18, 19. Plaintiff conclusorily and generally alleges the events giving rise to its alleged claims occurred in Contra Costa County, California, despite the fact that Roter, Dawson and BDB Capital do not have contacts with California. *See* Compl. ¶ 10. Finally, and notably, Plaintiff initiated contact with Exchange about entering into a Buyout Agreement. *See* Roter Decl. ¶ 14.

## IV. ARGUMENT

It is well established that the plaintiff has the burden of establishing jurisdiction. *See, e.g., Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). "[I]f plaintiff's allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

---

[2] Dawson, Roter and BDB re-state Plaintiff's allegations for the purposes of this motion to dismiss, but deny the allegations of the Complaint, and further deny that they are liable to Plaintiff.

In a diversity action, a United States district court may exercise personal jurisdiction over a nonresident defendant if jurisdiction is proper under the applicable state's long-arm statute and if that exercise accords with federal constitutional principles of due process. *See, e.g., Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm statute provides that jurisdiction may be exercised "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Accordingly, personal jurisdiction in California is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977).

Due process under the U.S. Constitution requires that a nonresident defendant have "minimum contacts" with the forum state so that maintaining a suit against the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Stated another way, the issue is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two types of personal jurisdiction: specific and general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). A court may exercise general jurisdiction where the nonresident defendant's activities are "substantial or continuous and systematic, even if the cause of action is unrelated to those activities." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If the nature of the defendant's contacts make exercise of general jurisdiction inappropriate, a court may nonetheless exercise specific jurisdiction if the contacts with the forum state are sufficient in relation to the cause of action for which the defendant is being sued. *See id.*

### A. Roter, Dawson and BDB Capital Lack Sufficient Contacts with California to be Subject to General Jurisdiction

Roter, Dawson and BDB Capital are not subject to general jurisdiction in California because, despite Plaintiff's conclusory allegations, Roter, Dawson and BDB Capital have not conducted substantial continuous nor systematic activities within California. *See* Roter Decl. ¶¶ 2, 4-10; *See* Dawson Decl. ¶¶ 2, 4-10, 17-19, 21-27. "The standard for establishing general jurisdiction is fairly high

and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citations omitted). The factors to consider for general jurisdiction include "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086.

Defendant BDB Capital has no contacts with California. BDB Capital is incorporated under the laws of the State of Colorado and has its principal place of business in Colorado. Dawson Decl. ¶ 17. Notably, Plaintiff does not and cannot allege that BDB Capital does business in California. *See* Compl. ¶ 3. BDB Capital does not make sales, hold any California issues licenses, solicit or engage in business in California, serve California's markets, nor has it designated an agent for service of process, and is not incorporated here. Dawson Decl. ¶¶ 18-20. BDB Capital does not (i) own property in California, (ii) have employees within California, (iii) maintain offices within California, (iv) have a telephone number within California, or (v) have bank accounts within California. Dawson Decl. ¶¶ 21, 23, 24, 26. BDB Capital does maintain a "passive" website that is accessible in California, with which visitors can send an inquiry via e-mail. Dawson Decl. ¶ 30. However, maintenance of a passive website does not subject BDB Capital to personal jurisdiction in California. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1153 (9th Cir. 2006) (British operator of bed and breakfast was not subject to personal jurisdiction based solely on its passive website, which had an on-line inquiry form). Thus, BDB Capital is not subject to the general jurisdiction of this Court.

Similarly, defendants Roter and Dawson do not have any contacts with California that would subject them to general jurisdiction in this state. To the extent Plaintiff argues Roter should be subject to jurisdiction in California as an officer of Exchange, a Delaware corporation registered to do business in California, that argument should be rejected. Roter's position as president of Liquid Capital does not subject him to personal jurisdiction in California. *See Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (an employee's contacts with a forum are not to be judged according to the employer's activities there; rather, each defendant's contacts with the forum state must be assessed individually).

Moreover, neither Roter nor Dawson are residents of California. Roter Decl. ¶ 2; Dawson Decl. ¶ 2. Roter resides in and is a citizen of Canada. Roter Decl. ¶ 1. Dawson resides in and is a citizen of

Colorado. Dawson Decl. ¶ 1. Although Plaintiff alleges Messrs. Roter and Dawson do business in California, neither Mr. Roter nor Mr. Dawson make sales, or solicit or engage in business in California. Further, Messrs. Roter and Dawson do not serve California's markets, have not designated an agent for service of process, nor hold any California issued licenses. Roter Decl. ¶¶ 3-4; Dawson Decl. ¶¶ 3-4. Neither Roter nor Dawson own real or personal property in California, have employees within California, maintain offices within California, have a telephone number within California, or have bank accounts within California. Roter Decl. ¶¶ 2, 6, 7, 9; Dawson Decl. ¶¶ 2, 6, 7, 9.

Given the foregoing facts and authorities, Plaintiff cannot meet the high standard for establishing general jurisdiction over any of Roter, Dawson and BDB Capital. Roter, Dawson and BDB Capital's contacts with California are neither substantial nor continuous and systematic such that they would approximate physical presence.

**B.    There Is No Specific Jurisdiction Over Roter, Dawson and BDB Capital**

Roter, Dawson and BDB Capital also do not have sufficient contact with the State of California to subject them to specific jurisdiction related to the causes of action in the Complaint. Specific jurisdiction requires:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (citation omitted). In this case, because there are no facts sufficient to support a finding that any of these factors have been met, specific jurisdiction over Roter, Dawson and BDB Capital may not be exercised.

**1.    Roter, Dawson and BDB Capital Have Not Purposefully Directed Their Activities in California Nor Purposefully Availed Themselves of Conducting Activities in California**

Plaintiff fails to adequately allege Roter, Dawson and BDB Capital purposefully availed themselves of the privilege of conducting business in California. The "purposeful availment requirement ensures that a

6

defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts...." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted). Plaintiff must show "purposeful direction," defined by the "three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *Schwarzenegger v. Ford Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). The defendant must have 1) committed an intentional act, 2) expressly aimed at the forum state, which 3) causes harm that the defendant knew was likely to be suffered in the forum state. *Id.*

Plaintiff has failed to show Roter, Dawson and BDB Capital "expressly aimed" any actions at California and that the brunt of any harm was suffered by Plaintiff, as purportedly anticipated by Roter, Dawson and BDB Capital in California. The "express aiming" requirement of *Calder* is satisfied "when the defendant is alleged to have engaged in wrongful conduct *targeted* at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087 (emphasis added). Here, it is Plaintiff who reached out to Exchange about the transaction involving Nature's Own, not the other way around. Roter Decl. ¶ 14. Therefore, Plaintiff cannot claim that Roter, Dawson or BDB Capital targeted their actions to Plaintiff.

Plaintiff's conclusory and unsupported allegations are also insufficient to subject Roter, Dawson and BDB Capital to personal jurisdiction in California. Plaintiff broadly alleges that "[a] substantial part of the events or omissions giving rise to the claims asserted herein took place in Contra Costa County. Plaintiff and ... Liquid Capital of Colorado, entered into a contract executed in Contra Costa County." Compl. ¶ 10.[3] Plaintiff broadly alleges that it relied on the defendants' alleged misrepresentations and omissions in purchasing the invoices of Nature's Own from Exchange. Compl. ¶¶ 13-29. However, Plaintiff does not provide any foundational facts, such as when or where any alleged misrepresentations occurred in Contra Costa County. Setting aside whether any of the defendants engaged in any wrongful conduct, which they did not, Plaintiff does not allege any of the defendants, and specifically Roter, Dawson and BDB Capital, even knew Plaintiff was a California resident.

Further, to the extent Plaintiff relies on its allegation that the contract was executed in Contra Costa County, this allegation alone is insufficient. "A contract alone does not automatically establish the

---

[3] Contrary to Plaintiff's allegation, BDB Capital never executed any contracts with Plaintiff. Dawson Decl. ¶ 19. *See also* Buyout Agreement.

requisite minimum contacts necessary for the exercise of personal jurisdiction." *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing are the factors to be considered." *Id.* Plaintiff does not, and cannot, show that any of these factors should subject Roter, Dawson and BDB Capital to personal jurisdiction in California. Any of the limited negotiations that occurred prior to the execution of the Buyout Agreement were between Exchange and Plaintiff and did not take place in California. Roter Decl. ¶ 14. Roter, Dawson and BDB Capital could not have contemplated future consequences in California because they were not parties to the negotiations or the Buyout Agreement. *See* Buyout Agreement. Moreover, the terms of the Buyout Agreement do not reference California and the dealings between Plaintiff and Exchange, not Roter, Dawson or BDB Capital, did not occur in California. Roter Decl. ¶ 14. Thus, Roter, Dawson and BDB Capital could not have contemplated future consequences for themselves in California.

### 2. Plaintiff's Claims Against Roter, Dawson and BDB Capital Did Not Arise from California-Related Activities

Plaintiff has not met the second prong of the specific-jurisdiction test because it has not shown that its claims against Roter, Dawson and BDB Capital arose from their California-related activities. Plaintiff must show that it "would not have been injured 'but for' [Roter, Dawson and BDB Capital's] conduct directed toward [Plaintiff] in California." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The ultimate inquiry under the second prong of the specific jurisdiction test is whether Plaintiff would have suffered harm but for "the contacts constituting purposeful availment." *Bancroft & Masters*, 223 F.3d at 1088. As discussed above, however, Roter, Dawson and BDB Capital have not engaged in California-related activities – they do not sell or solicit sales within California or otherwise conduct business in the state. Roter Decl. ¶ 4; Dawson Decl. ¶¶ 4, 19. Simply stated, Roter, Dawson and BDB Capital have no contacts with California constituting purposeful availment.

### 3. The Exercise of Jurisdiction Over Roter, Dawson and BDB Capital Would Be Unreasonable

As to the third prong of the specific jurisdiction test, exercise of personal jurisdiction under the instant facts and circumstances would be patently unreasonable. To be reasonable, jurisdiction must comport with "fair

NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO QUASH SERVICE OF PROCESS; MEMORANDUM OF POINT AND AUTHORITIES

play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The *Burger King* Court set forth seven factors for determining whether the exercise of jurisdiction over a nonresident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *See* 471 U.S. at 476-77; *Bancroft & Masters*, 223 F.3d at 1088. No one factor is dispositive; all must be balanced and considered together. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). Here, a balancing of all seven factors shows that the exercise of jurisdiction by this Court would fail to comply with proper notions of fair play and substantial justice.

        (a)    <u>Extent of Roter, Dawson and BDB Capital's Purposeful Interjection into California</u>

Even if a nonresident defendant's contacts with the forum state are sufficient to meet the purposeful availment test, they may still be insufficient to satisfy the *Burger King* purposeful-interjection factor. *See id.* Further, "[t]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Insurance Co. of N. Am. v. Marina Santa Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981); *see also Core-Vent*, 11 F.3d at 1488. Here, neither is present. Aside from its conclusory allegations that Roter, Dawson and BDB Capital's conduct giving rise to the Complaint occurred in Contra Costa County, California, and that Messrs. Roter and Dawson do business in California, Plaintiff has failed to show that Roter, Dawson and BDB Capital's contacts with California are anything but virtually nonexistent. As set forth above, Roter, Dawson and BDB Capital have no business dealings in California. Roter Decl. ¶ 4; Dawson Decl. ¶ 4, 18-19. Thus, this factor weighs heavily in favor of the Court abstaining from exercising jurisdiction over Roter, Dawson and BDB Capital.

        (b)    <u>The Burden Upon Roter, Dawson and BDB Capital Defending in California</u>

The second *Burger King* factor requires assessing the burden on the defendant in defending in the forum. Here, the burden is particularly acute for Mr. Roter, who is a citizen of Canada. Defending oneself in a foreign legal system imposes a substantial burden on an alien defendant. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987) (finding the burden on a defendant severe when commanded

9

by the Supreme Court of California to traverse the distance between the defendant's headquarters in Japan to Solano County, California). Moreover, the unique burdens placed upon a foreign defendant lend significant weight to this factor. *See id.* (maintaining "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). These burdens are all the greater on a defendant that has few if any connections to the forum state. *Cf. Core-Vent*, 11 F.3d at 1488 (burden greater on defendant that has no connections to forum nation). Mr. Roter has no contacts, continuing or otherwise, with California. *See* Roter Decl. ¶ 17. As Colorado citizens with no contacts with California, Mr. Dawson and BDB Capital would similarly be burdened by having to defend themselves in California. Accordingly, this factor weighs heavily in Roter, Dawson and BDB Capital's favor as well.

### (c) The Extent of the Conflict with a Foreign Sovereign

The third *Burger King* factor weighs the extent of the conflict with the sovereignty of the defendant's state. "Where the defendant is a resident of a foreign nation rather than a resident of another state within our federal system, the sovereignty barrier is 'higher.'" *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981). Further, sovereignty concerns weigh more heavily the fewer relationships an alien defendant has with the United States and the forum state. *See Core-Vent*, 11 F.3d at 1489 (citing *Asahi*, 480 U.S. at 112-13). As set forth above, Mr. Roter has no California-based relationships. Roter Decl. ¶¶ 2, 4, 6-10. Moreover, Mr. Roter's residency in Canada "tends also to undermine the reasonableness of personal jurisdiction . . . ." *Rocke*, 660 F.2d at 399. Similarly, Mr. Dawson and BDB Capital have no California relationships either. Dawson Decl. ¶¶ 2, 4, 6-10, 17-19, 21-26. Thus, this third factor also weighs particularly in Roter, Dawson and BDB Capital's favor.

### (d) California's Interest in Adjudicating the Dispute

It is recognized that California has a "strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Gordy v. Daily News L.P.*, 95 F.3d 829, 836 (9th Cir. 1996). Although Plaintiff has brought tort claims against Roter, Dawson and BDB Capital, this factor alone is not dispositive. *See Core-Vent*, 11 F.3d at 1488 (holding that despite California's interest in providing a forum to those who are injured in its state, that interest must give way when individual citizens of a foreign county lack connections to the United States and whose purposeful interjection into the forum state has been very limited).

(e) <u>The Most Efficient Judicial Resolution of the Controversy</u>

Evaluating the most efficient judicial resolution of the controversy requires looking "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. This factor weighs against California, as most of the witnesses and evidence are likely located outside of California. Plaintiffs admit the events alleged in the Complaint originated with "[a] small group of criminals in Florida." Compl. ¶ 13. Plaintiff does not specify where Roter, Dawson and BDB Capital's alleged misrepresentations and omissions occurred, but conclusorily alleges their conduct occurred in Contra Costa County. However, given that Roter, Dawson and BDB Capital are citizens of Canada and Colorado, with no contacts with California, most of the witnesses and evidence are located outside of California.

(f) <u>The Availability of an Alternative Forum</u>

The sixth *Burger King* factor asks whether an alternative forum exists. Colorado or Canada is available as an alternative forum. In the absence of any showing that Plaintiff would be precluded from suing outside of California, *see Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988), there is nothing that militates against Colorado or Canada as an alternative forum in which Plaintiff could sue Roter, Dawson and BDB Capital. "Doubtless [Plaintiff] would prefer not to, but that is not the test." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991). This factor, then, weighs in favor of the Roter, Dawson and BDB Capital.

(g) <u>The Importance of California to Plaintiff's Interest in Convenient and Effective Relief</u>

The final factor is the importance of the forum to the plaintiff's interest in convenient and effective relief. There can be little question that it would be more convenient to Plaintiff to litigate against all of the defendants in California; "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth*, 942 F.2d at 624. Thus, while this factor weighs in Plaintiff's favor, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11 F.3d at 1490.

When balancing and considering all factors together, *see Core-Vent*, 11 F.3d at 1488, it becomes apparent that the exercise of personal jurisdiction over Roter, Dawson and BDB Capital here would be unreasonable. Accordingly, Roter, Dawson and BDB Capital's motion to dismiss for lack of personal

11
NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO QUASH SERVICE OF PROCESS; MEMORANDUM OF POINT AND AUTHORITIES

jurisdiction should be granted.

### C. Mr. Roter Has Not Been Properly Served Under the Hague Convention

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service must be satisfied. *See Omni Capital Int'l Ltd. v. Rudol Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946). Service of process upon foreign individuals in a federal action is governed by Federal Rule of Civil Procedure 4(f). Service upon an individual in Canada may be obtained as authorized by the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents, of which Canada is a signatory. *See* Fed. R. Civ. P. 4 note (Convention). The Hague Convention requires each country to set up a Central Authority which must effectuate service when it is provided with documents that comply with its rules. *BBK Tobacco & Foods LLP v. Juicy eJuice*, No. CV–13–00070–PHX–GMS, 2014 WL 1686842, *3 (D. Ariz. April 29, 2014). Plaintiff has failed to file and serve documentation demonstrating it has complied with the Hague Convention. Therefore, Plaintiff has failed to comply with the exacting requirements of the Hague Convention and Rule 4. Accordingly, service of process must be quashed.

## V. CONCLUSION

For the foregoing reasons, Roter, Dawson and BDB Capital respectfully request that the Court issue an order (1) dismissing the Complaint against them for lack of personal jurisdiction and (2) quashing service of process upon Defendant Roter.

DATED: January 20, 2015                GREENBERG TRAURIG, LLP

By /s/ *William J. Goines*
William J. Goines
Amanda D. Donson

Attorneys for Defendants Liquid Capital Exchange, Inc., BDB Capital, Inc. (d/b/a Liquid Capital of Colorado) (erroneously sued as Liquid Capital of Colorado), Sol Roter, an Individual, and Bruce Dawson, an Individual

# EXHIBIT A



July 8, 2011

Liquid Capital Exchange, Inc.
5734 Yonge Street, Suite 400
Toronto, Canada  M2M 4E7

                                                             Via Facsimile

Attn:  Mr. Sol Roter

Re:     Nature's Own Pharmacy (the "Company")

Dear  Sol:

To induce you to terminate your financing arrangements with Nature's Own Pharmacy as of July 13, 2011, (the "Termination Date"), and to terminate your security interest in the assets of the Company agree as follows:

1. We will pay to you the amount of $275,000.00 to be credited by you against the obligations of the Company in your favor which amount represents the principal amount of such outstanding obligations plus accrued interest and fees thereon as of the Termination Date.

2. You hereby release, as of the Termination Date, all security interests and liens which have heretofore been granted to you by the Company. You agree to prepare, execute and deliver to us appropriate releases and termination statements to affect such releases which we shall file at our sole cost and expense.

3. You agree to remit to us any amounts which Nature's Own Pharmacy may be entitled to receive from you, from time to time, upon the adjustment of its account with you. Furthermore, you agree to remit to us any collections that you may subsequently receive on any of the Company's accounts for which payment may be made to you. In the event that any payment which is the subject of remittance by you to us hereunder is sought to be recovered by the payor or a representative thereof (including a trustee in bankruptcy or assignee for the benefit of creditors on the grounds of preference), then you shall promptly so advise us in writing,

following which we shall have the exclusive right and obligation, at our sole cost and expense, to contest, defend or settle such claim.

4. Please complete this section for accurate transmittal of monies:

    Bank name : Bank of America
    Routing/ABA Number : ▓▓▓▓▓▓▓▓
    Account Name to credit : Liquid Capital Exchange, Inc.
    Account Number to credit ▓▓▓▓▓▓▓▓

This agreement may be executed in counterparts. Each counterpart shall be deemed an original but all of which together shall constitute one and the same instrument. An executed facsimile of this agreement shall be deemed to be a valid and binding agreement between you and us.

If the above correctly sets forth your and our agreement, please execute the enclosed copy of this letter in the spaces provided below and return such fully executed copy to the undersigned as soon as possible.

Very truly yours,

CONSENTED AND AGREED TO
This 13th day of July 2011.

Marble Bridge Funding Group, Inc.

By: _____
Name: Tammy Mooney
Title: Operations Analyst

Liquid Capital Exchange, Inc.

By: _____
Title: PRESIDENT

**Nature's Own Pharmacy, LLC**
a Limited Liability Company

By: _____
Name: Richard Wallace
Title: Managing member