WILLIAM J. GOINES (SBN: 61290)
goinesw@gtlaw.com
AMANDA D. DONSON (SBN: 300022)
donsona@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

JON L. SWERGOLD
(*admitted pro hac vice*)
swergoldj@gtlaw.com
GREENBERG TRAURIG, LLP
Greenberg Traurig, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

Attorneys for Defendants
BDB Capital, Inc. (d/b/a Liquid Capital of Colorado)(erroneously sued as Liquid Capital of Colorado), Sol Roter, an Individual, and Bruce Dawson, an Individual

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

MARBLE BRIDGE FUNDING GROUP, INC.,

Plaintiff,

v.

LIQUID CAPITAL EXCHANGE, INC., LIQUID CAPITAL OF COLORADO, SOL ROTER, AN INDIVIDUAL, AND BRUCE DAWSON, AN INDIVIDUAL,

Defendants.

Case No. CV15-00177-YGR

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO QUASH SERVICE OF PROCESS; MEMORANDUM OF POINT AND AUTHORITIES**

Date: March 10, 2015
Time: 2:00 p.m.
Dept.: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Rogers

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ..... 1

II. ARGUMENT ..... 2

A. Marble Bears the Burden of Proof ..... 2

B. Marble Fails to Assert a Basis for the Court to Exercise Jurisdiction Over BDB ..... 2

C. Dawson Is Not Subject to the Court's Specific Jurisdiction ..... 2

1. Marble Fails to Satisfy the Calder Three Part Effects Test ..... 2

2. Marble's Claims Against Dawson Did Not Arise From California-Related Activities ..... 3

D. Roter is Not Subject to the Court's Specific Jurisdiction ..... 4

1. Marble Fails to Satisfy the Calder Three Part Effects Test ..... 4

2. Marble's Claims Against Roter Did Not Arise From California-Related Activities ..... 5

E. The Exercise of Jurisdiction Over Roter, Dawson and BDB Would Be Unreasonable ..... 5

1. Extent of Roter, Dawson and BDB's Purposeful Interjection into California ..... 5

2. The Burden Upon Roter, Dawson and BDB Capital Defending in California ..... 5

3. The Availability of an Alternative Forum ..... 6

4. The Balance of the Burger King Factors Favors the Defendants ..... 6

III. CONCLUSION ..... 6

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Amba Marketing Systems, Inc. v. Jobar International, Inc.*, *551 F.2d 784 (9th Cir. 1977)* ..... 2

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000) ..... 3, 4

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..... 6

*Calder v. Jones*, *465 U.S. 783 (1984)* ..... 2

*Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir. 1995) ..... 2

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ..... 3, 6

*Nguyen v. Bank of America National Association et. al.*, 2011 WL 5574917, at *3 (N.D. Cal. 2011) ..... 4

*Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ..... 3, 5

*Schwarzenegger v. Ford Martin Motor Co.*, 374 F. 3d 797 (9th Cir. 2004) ..... 2

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ..... 2

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

In the Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion")[1] filed by Defendants BDB Capital, Inc. (d/b/a Liquid Capital of Colorado) (erroneously sued as Liquid Capital of Colorado) ("BDB"), a citizen of Colorado, Bruce Dawson ("Dawson"), a citizen of Colorado, and Sol Roter ("Roter"), a citizen of Canada, (collectively, the "Defendants"), the Defendants demonstrated that the Complaint filed by Plaintiff Marble Bridge Funding Group, Inc. ("Marble"), a citizen of California, should be dismissed because the Defendants lack sufficient contacts with California to be subject to the general jurisdiction or specific jurisdiction of the Court. The Defendants are not subject to the Court's general jurisdiction because they do not live, have assets, nor conduct business in California. The Defendants are not subject to the Court's specific jurisdiction because (a) they did not purposefully direct their activities in California, (b) they did not purposely avail themselves of conducting activities in California, (c) Plaintiff's claims did not arise from California-related activities, and (d) the Defendants lack minimum contacts with California such that the exercise of jurisdiction over them would be unreasonable.

In its Memorandum in Opposition to the Motion (the "Opposition"), Marble argues the Court has specific jurisdiction and does not argue for the exercise of general jurisdiction. In support of its position, Marble reiterates certain of the allegations of the Complaint, attaches multiple deposition excerpts taken in other matters, which the Defendants were not parties to and which Marble has been litigating for over two years prior to filing the instant action, and cites a single email obtained in such other litigation. Among the depositions Marble relies upon are the depositions of Marble's CEO, Paul Candau ("Candau"), Marble's Senior Vice President, Andrew Krone ("Krone"), Marble's Operations Manager, Tammy Mooney ("Mooney"), and Marsha Holloway, aka Anette Zimmerman ("Holloway"), a convicted career felon, who Marble labels a fraudster and a criminal in the Complaint. Marble's reliance upon such testimony is misguided as the testimony is either irrelevant to the issues or supports the Defendants' Motion.

For the reasons discussed in the Motion and below, the Defendants respectfully request the Court

[1] Roter does not seek to proceed on his motion to quash service.

grant the Motion and dismiss Plaintiff's claims.

## II. ARGUMENT

### A. Marble Bears the Burden of Proof

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where the motion is based upon written submissions rather than an evidentiary hearing, the plaintiff is required to make a prima facie showing of jurisdictional facts. *Id.* The Court's inquiry is limited to a review of the pleadings and affidavits. *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. 1995). A plaintiff may not "simply rest on the bare allegations of its complaint …." *Amba Marketing Systems, Inc. v. Jobar International, Inc. 551 F.2d 784, 787 (9th Cir. 1977).*

### B. Marble Fails to Assert a Basis for the Court to Exercise Jurisdiction Over BDB

Marble's Opposition fails to address the Motion with respect to BDB. Throughout the Opposition, Marble's arguments are limited to Roter and Dawson. Not one single sentence of the Opposition asserts any facts or cites any evidence to support the Court exercising jurisdiction over BDB. As a result, the Motion as it relates to BDB should be granted.

### C. Dawson Is Not Subject to the Court's Specific Jurisdiction

#### 1. Marble Fails to Satisfy the *Calder* Three Part Effects Test

In *Schwarzenegger v. Ford Martin Motor Co.,* 374 F. 3d 797, 803 (9th Cir. 2004), the Court held a plaintiff must show "purposeful direction," defined by the "three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones, 465 U.S. 783 (1984)."* Specifically, the defendant must have (a) committed an intentional act, (b) expressly aimed at the forum state, which (c) causes harm that the defendant knew was likely to be suffered in the forum state. *Id.*

##### a. Dawson's Conduct was Not Aimed At Marble or California

In the Opposition, Marble cites excerpts from depositions of three of its executives, Candau, Mooney and Krone (collectively, the "Marble Executives"), taken in a matter in which Dawson is not a party and thus, lacked an opportunity to question these witness. Nonetheless, none of the Marble Executives testified to having any contact with Dawson whatsoever - not a single email, facsimile,

telephone call, meeting or otherwise. Further, Marble relies upon Holloway's meandering testimony. When read carefully, Holloway's testimony does not provide any support for the notion that Dawson was even aware of the existence of Marble or that Marble operates in California. At most, Holloway's testimony indicates she spoke with "Karl", a colleague of hers at Nature's Own Pharmacy, LLC ("Nature's Own"), about Marble. [Doc 11-2] [Holloway Depo. at 199:13-200:12]. Finally, Marble has failed to produce a single document bearing Dawson's name; even the agreement ultimately executed by Liquid Capital Exchange, Inc. ("Exchange") and Marble fails to mention Dawson. In sum, Marble has failed to plead or present any evidence whatsoever that Dawson even knew about Marble and its dealings with Nature's Own or that Marble was based in California.[2] Inasmuch as Dawson had no contact with Marble and there is no evidence that Dawson even knew about Marble, much less that Marble was located in California, Dawson's conduct cannot be said to have been specifically *aimed* at California or Marble. Accordingly, the Court lacks jurisdiction over Dawson.

**b. <u>Dawson Cannot be Charged With Knowing His Conduct Would Cause Harm Likely to be Suffered in California</u>**

Without knowing of the existence of Marble or that it was located in California, it is difficult to conceive how Dawson could possibly be charged with knowing his conduct would cause harm *likely* to be suffered in California. Accordingly, the Court lacks jurisdiction over Dawson.[3]

**2. <u>Marble's Claims Against Dawson Did Not Arise From California-Related Activities</u>**

Marble must show that it "would not have been injured 'but for' [Dawson's] conduct directed toward [Marble] in California." *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998). Where a defendant *individually targets* a plaintiff, jurisdiction may be exercised by a California federal court. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000). Unlike in

---

[2] Marble does not dispute that Dawson's contact with Marble was limited to 2 or 3 telephone calls arranged by Marble's then acting counsel, which occurred ***almost three years after*** the events alleged in the Complaint. [Doc 8-1] [Dawson Decl. at ¶ 31].

[3] Marble's reliance upon *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) is misplaced as it is factually distinguishable. The defendants in *Dole* were a former employee of Dole and attorney for Dole who had extensive, direct communications with Dole's executives in California over a sustained period of time, and knew Dole's principal place of business was in California. Accordingly, *Dole* is inapposite.

*Bancroft*, however, because there is no evidence Dawson was aware of Marble, his conduct was no more California-related than it was related to any other state. Simply put, Dawson did not target California or Marble. As discussed above, there is no evidence that Dawson was even aware of the existence of Marble or that it operates in California until *approximately three years after* the events alleged in the Complaint occurred. [Doc 8-1] [Dawson Decl. ¶ 31]. Given Marble's failure to demonstrate Dawson had any contact with and knowledge of Marble and its operations in California, Dawson is not subject to the Court's specific jurisdiction.

### D. Roter is Not Subject to the Court's Specific Jurisdiction

#### 1. Marble Fails to Satisfy the *Calder* Three Part Effects Test

##### a. Roter's Conduct was Not Aimed At Marble or California

The "express aiming" requirement of *Calder* is satisfied "when the defendant is alleged to have engaged in *wrongful conduct targeted at a plaintiff* whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087 (emphasis added). The evidence shows Roter's conduct was limited to a few telephone calls, emails and facsimiles with Marble. Notably, Mooney's testimony is devoid of any allegation, much less a suggestion, that Roter engaged in any *wrongful* conduct.[4] Moreover, it was Marble who initiated contact with Roter on behalf of Exchange. [Doc 8-2] [Roter Decl. ¶ 14]. Thus, Roter did not engage in wrongful conduct targeted at Marble or California. As demonstrated above, because the evidence is inconsistent with the pleadings, the exhibit controls.

##### b. Roter Cannot be Charged With Knowing His Conduct Would Cause Harm Likely to be Suffered in California

As noted above, Roter's conduct was not wrongful. Thus, Roter cannot be charged with knowing his conduct would cause harm likely to be suffered in California.

[4] Notwithstanding the allegations of the Complaint, pursuant to Holloway's testimony, Roter did not prepare any documentation Nature's Own may have submitted to Marble. To the extent a plaintiff's exhibits and affidavits in support of its opposition to a motion to dismiss are inconsistent with its complaint, the exhibits should control. *Cf. Nguyen v. Bank of America National Association et. al.*, 2011 WL 5574917, at *3 (N.D. Cal. 2011) (when an exhibit to plaintiff's complaint contradicts an allegation of the complaint, the exhibit controls).

#### 2. Marble's Claims Against Roter Did Not Arise From California-Related Activities

Marble must show that it "would not have been injured 'but for' [Roter's] conduct directed toward [Marble] in California." *Panavision*, 141 F.3d at 1322. The evidence produced by Marble shows Holloway forwarded reports to Marble that were purportedly prepared by Dawson, not Roter. [Doc 11-2] [Holloway Depo. at 200:20-201:2]. Indeed, as noted above, the documents provided to Holloway were accurate. Further, the evidence shows that Roter's conduct was limited to a few brief telephone calls, emails and faxes. At her deposition, Mooney admitted no one from Liquid Capital visited Marble's offices in California or came to California and that the closing on the buyout agreement was done by email. [Doc 11-2] [Mooney Depo. 42:9-42:11]. Again, Mooney's testimony is devoid of any allegation, much less a suggestion, that Roter engaged in any *wrongful* conduct. Simply put, it *cannot* be said that but for Roter's conduct directed toward Marble in California, Marble would not have been injured.

### E. The Exercise of Jurisdiction Over Roter, Dawson and BDB Would Be Unreasonable

#### 1. Extent of Roter, Dawson and BDB's Purposeful Interjection into California

Marble has failed to plead or present any evidence that BDB purposefully interjected itself into California. Therefore, this factor weighs heavily in BDB's favor.

Dawson has had no contact with Marble whatsoever and there is no evidence he even knew of Marble's existence, much less that it was located in California. Thus, Dawson has not purposefully interjected himself into California. Accordingly, this factor weighs heavily in Dawson's favor.

Roter's contact with Marble was limited to a few telephone calls, emails and faxes, which were initiated by Marble. Indeed, other than Marble's address being on the buyout agreement executed by Exchange with Marble, there is no evidence that Roter even knew Marble was located in California. Given the forgoing, this factor weights in Roter's favor.

#### 2. The Burden Upon Roter, Dawson and BDB Capital Defending in California

Marble has failed to plead or present any evidence that BDB would not be unduly burdened by having to defend a lawsuit in California. Therefore, this factor weighs heavily in BDB's favor.

As demonstrated in Roter and Dawson's declarations, neither has had any contacts with California. Marble's reliance upon *Dole* is misplaced. In *Dole*, the defendants were a former employee

of Dole and an attorney for Dole who had extensive, direct communications with Dole's executives in California over a sustained period of time, knew Dole's principal place of business was in California and had traveled to the United States – including travel directly related to the events that gave rise to the claims alleged by Dole. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1117-18 (9th Cir. 2002). Accordingly, *Dole* is inapposite and this factor weighs in favor of Roter and Dawson.

**3. <u>The Availability of an Alternative Forum</u>**

Marble has failed to demonstrate that it would be precluded from suing Dawson, Roter and BDB outside of California and has admitted Colorado and Canada are available as alternative forums. Accordingly, this factor weighs in favor of the Defendants.

**4. <u>The Balance of the *Burger King* Factors Favors the Defendants</u>**

Given the forgoing, neither Dawson, Roter nor BDB could "reasonably anticipate being hailed into court" in California. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, it would be unreasonable for the Court to exercise jurisdiction over Dawson, Roter or BDB. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

## III. CONCLUSION

For the foregoing reasons, Roter, Dawson and BDB respectfully request the Court issue an order dismissing the Complaint against them for lack of personal jurisdiction.

DATED: February 20, 2015

GREENBERG TRAURIG, LLP

By /s/ *William J. Goines*
William J. Goines
Jon L. Swergold
Amanda D. Donson

Attorneys for Defendants BDB Capital, Inc. (d/b/a Liquid Capital of Colorado) (erroneously sued as Liquid Capital of Colorado), Sol Roter, an Individual, and Bruce Dawson, an Individual