United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARBLE BRIDGE FUNDING GROUP, INC., | Case No. 5:15-cv-00177-EJD |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO QUASH** |
| v. | |
| LIQUID CAPITAL EXCHANGE, INC., et al., | Re: Dkt. No. 8 |
| Defendants. | |

As this court has learned, Plaintiff Marble Bridge Funding Group, Inc. ("Marble Bridge") is a "factor," or a commercial finance company that provides account receivable financing to businesses that sell their products to other businesses. See Compl., Docket Item No. 1, at ¶ 8. Through these "factoring" transactions, Marble Bridge provides up-front cash to its clients earlier than the 45 to 60 days they would otherwise need to wait for payment on outstanding invoices, which the clients can then use to continue and grow their operations. Id.

Defendants Liquid Capital Exchange, Inc. and one of its franchises, Liquid Capital of Colorado[1] are also factors. Id. at ¶ 9. Defendant Sol Roter, a Canadian citizen, is the vice president and an executive of Liquid Capital Exchange, Inc. Id. Defendant Bruce Dawson is a citizen of Colorado and the president of Liquid Capital of Colorado, which is a Colorado

_____

[1] Liquid Capital of Colorado represents that its true corporate name is BDB Capital, Inc. doing business as Liquid Capital of Colorado. Subsequent to this introduction, Liquid Capital Exchange, Inc. and BDB Capital, Inc. will be referred to collectively as the "Liquid Capital Defendants." Separately, Liquid Capital Exchange, Inc. will be referred to as "Exchange" and BDB Capital, Inc. will be referred to as "BDB Capital."

1

Case No.: 5:15-cv-00177-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND MOTION TO QUASH

1    corporation. Id.

2         Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Presently before the court is a

3    Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Quash Service of Process. See

4    Docket Item No. 8. Marble Bridge opposes. See Docket Item No. 11. For the reasons explained

5    below, the Motion to Dismiss will be granted in part, but all other requests for relief will be

6    denied.

7    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

8         Marble Bridge alleges that a "small group of criminals" located in Florida (who Marble

9    Bridge has sued in another case pending before the undersigned), figured out that they could

10   defraud factors out of millions of dollars by obtaining credit insurance, which sellers of goods or

11   services purchase to insure their accounts receivable in the event the debtors fail to pay. Id. at ¶

12   13. The Florida "criminals"  - Kay Holloway aka Marsha Holloway aka Anette Zimmerman

13   ("Holloway") and Greg Winters - operated a fraudulent company known as "Nature's Own," and

14   most often purchased credit insurance from Euler Hermes Credit Indemnity Company ("Euler"), a

15   French subsidiary of the German corporation Allianz. Id. at ¶¶ 13, 15. Credit insurance from

16   Euler is often critically important for high risk, out-of-state and foreign corporations because,

17   without it and its accompanying assurances and guarantees, factors like Marble Bridge will not

18   finance these corporations' accounts receivable. Id. at ¶ 14.

19        On or about November 1, 2010, Euler issued a credit insurance policy, effective from

20   November 1, 2010, to October 31, 2011, to two companies, Nature's Own Inc. and Nature's Own

21   LLC. Id. at ¶ 16. The Liquid Capital Defendants were listed as the beneficiaries of the Nature's

22   Own policy. Id. More specifically, Dawson entered into the agreement to finance the Nature's

23   Own accounts receivable on behalf of the Liquid Capital Defendants. Id. at ¶ 17.

24        The Liquid Capital Defendants purchased $340,000.00 worth of Nature's Own invoices on

25   April 6, 2011. Id. But Marble Bridge alleges that within one month, Dawson discovered that

26   Nature's Own and its buyers were a fraud and that Euler would not pay on the credit insurance

27

28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

*United States District Court*
*Northern District of California*

2

1   policy if and when there was a default.  Id. at ¶ 18.  Dawson researched Nature's Own and

2   confirmed that it did not actually exist.  Id.

3          Marble Bridge further alleges that Roter and Dawson communicated this information to

4   Holloway, and that Dawson "demanded hush-money to keep him from revealing the fraud."  Id. at

5   ¶ 19.  According to Marble Bridge, Roter, Dawson and Holloway then entered into an agreement

6   with "the other fraudsters" and Euler, through its agent John Fitzgerald, to induce a new factor to

7   buy out the Liquid Capital Defendants' interest in the receivables of Nature's Own by concealing

8   the fraudulent scheme.  Id.

9          Marble Bridge was the new factor.  Before agreeing to purchase Nature's Own invoices

10   from the Liquid Capital Defendants, Marble Bridge demanded Nature's Own financial records

11   from Holloway.  Id. at ¶ 22.  What it received, however, were records generated by the Liquid

12   Capital Defendants which concealed from Marble Bridge that Nature's Own customers had not

13   made any payments.  Id.  Marble Bridge alleges that Holloway, Roter, Dawson and the Liquid

14   Capital Defendants knew the records were false.  Id. at ¶ 23.  In addition, Roter, Dawson and the

15   Liquid Capital Defendants misrepresented to Marble Bridge the reason it wanted to sell its interest

16   in the Nature's Own receivables by indicating that Nature's Own wanted to be financed at a level

17   that the Liquid Capital Defendants were willing to provide.  Id. at ¶ 24.

18          In reliance on these representations and after conducting its own investigation, Marble

19   Bridge purchased Nature's Own invoices from Liquid Capital on July 13, 2011.  Id. at ¶ 25.

20   Marble Bridge then went on to purchase an additional $2 million worth of fake invoices from

21   Nature's Own over the ensuing six months.  Id.  Unbeknownst to Marble Bridge, however, fake

22   buyers of Nature's Own were paying off the invoices for which it had paid the Liquid Capital

23   Defendants, thereby creating the appearance that the buyers were good credit risks and were

24   worthy of additional invoice purchases.  Id. at ¶ 29.  This appearance was reinforced when Euler

25   increased the credit limits for the fake buyers in January, 2012.  Id. at ¶ 31.

26          On January 13, 2012, Marble Bridge began investigating the payment patterns of the

27

28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

3

1    Nature's Own buyers and, by February, 2012, all of the buyers were in "past due" status on the

2    invoices purchased by Marble Bridge.  Id. at ¶¶ 30.  In response, Euler began cancelling the credit

3    limits on all of the fake buyers on February 27, 2012.  Id. at ¶ 32.

4          On March 7, 2012, Marble Bridge made claims on the Nature's Own policy, but Euler

5    rescinded coverage and presumably did not pay any on any of the claims.  Id. at ¶ 34.  As a result,

6    Marble Bridge has lost $2.8 million.  Id. at ¶ 35.

7          Marble Bridge initiated this action in Contra Costa County Superior Court on December 3,

8    2014.  It asserts claims against all defendants for (1) aiding and abetting a fraud, (2) intentional

9    misrepresentation, and (3) fraudulent concealment.  The Liquid Capital Defendants, Roter and

10   Dawson removed it to this court on January 13, 2015, where it was eventually related to two other

11   pending cases[2] and assigned to the undersigned.  This motion followed.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(2)

14         Rule 12(b)(2) provides that a defendant may move for dismissal based on a lack of

15   personal jurisdiction.  "Whether there is a basis for the exercise of personal jurisdiction in a

16   diversity of citizenship case depends upon two considerations: (1) whether a state statute

17   potentially confers personal jurisdiction over the nonresident defendant, and (2) whether the

18   exercise of jurisdiction accords with federal constitutional principles of due process."  Congoleum

19   Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1241 (9th Cir. 1984).  California's statutory

20   limitation is co-extensive with the outer limits of due process.  Sher v. Johnson, 911 F.2d 1357,

21   1361 (9th Cir. 1990); Cal. Code Civ. Proc. § 410.10.  Accordingly, the jurisdictional inquiries

22   under federal due process and California law merge into a single analysis.  See Rano v. Sipa Press,

23   Inc., 987 F.2d 580, 587 (9th Cir. 1993).

24         Due process permits the exercise of jurisdiction if a court has either general or specific

25

26   [2] The related cases are Marble Bridge Funding Group, Inc. v. Nature's Own Pharmacy, LLC, Case
     No. 5:12-cv-01839-EJD, and Marble Bridge Funding Group, Inc. v. Euler Hermes American
27   Credit Indemnity Company, Case No. 5:12-cv-02729-EJD.

                                                    4
28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

1  jurisdiction over a nonresident defendant.  See Sher, 911 F.2d at 1361.  "General jurisdiction

2  applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,'

3  even if the cause of action is unrelated to those activities."  Id. (citing Data Disc, Inc. v. Sys. Tech.

4  Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977)).  "Where general jurisdiction is inappropriate,

5  a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the

6  forum state in relation to the cause of action."  Id.

7       Although the plaintiff bears the burden of demonstrating jurisdiction, where, as here, a

8  court considers only written materials, the plaintiff need only make a prima facie showing of

9  jurisdictional facts to overcome a defendant's motion to dismiss.  See Data Disc, Inc., 557 F.2d at

10  1285.  A plaintiff makes a prima facie showing by producing admissible evidence which, if

11  believed, would be sufficient to establish the existence of jurisdictional facts.  Ballard v. Savage,

12  65 F.3d 1495, 1498 (9th Cir. 1995).  In deciding whether such a showing has been made, a district

13  court must accept as true the uncontroverted allegations in the complaint and must resolve any

14  conflicts over statements made in the parties' affidavits in the plaintiff's favor.  See Love v.

15  Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010).  "However, the court need not

16  assume the truth of mere conclusory allegations."  China Tech. Global Corp. v. Fuller, Tubb,

17  Pomeroy & Stokes, No. 05-cv-1793-JW, 2005 U.S. Dist. LEXIS 46137, at *5, 2005 WL 1513153

18  (N.D. Cal. June 27, 2005).

19       **B.    Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5)**

20       "A federal court does not have jurisdiction over a defendant unless the defendant has been

21  served properly under [Federeal Rule of Civil Procedure] 4."  Direct Mail Specialists v. Eclat

22  Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988); see also Murphy Bros., Inc. v.

23  Mitchell Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("Service of process, under longstanding

24  tradition in our system of justice, is fundamental to any procedural imposition on a named

25  defendant.").  Mere notice that a lawsuit is pending is not sufficient.  Rohit Biochem Pvt. Ltd. v.

26  Arya Group, Inc., No. CIV S-07-1575 FCD GGH, 2009 U.S. Dist. LEXIS 48740, at *3, 2009 WL

27

28  Case No.: 5:15-cv-00177-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

1    1635175 (E.D. Cal. June 10, 2009) (citing <u>Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.</u>,

2    484 U.S. 97, 104 (1987)).

3         Rule 12(b)(4) permits a defendant to "challenge noncompliance with the provisions of

4    Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the

5    content of the summons."   <u>Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.</u>, No.

6    CV-14-02139-MWF (VBKx), 2015 U.S. Dist. LEXIS 49954, at *21, 2015 WL 1608991 (C.D.

7    Cal. Apr. 10, 2015) (citing 5B Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and

8    Procedure § 1353 (3d ed. rev. 2014)).  In contrast, Rule 12(b)(5) permits a defendant to challenge

9    the mode or method of service of the summons and complaint.  Where the validity of service is

10   contested, the burden is on the party claiming proper service to establish its validity.  <u>Cranford v.</u>

11   <u>United States</u>, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005) (citing <u>Grand Entm't Group, Ltd. v. Star</u>

12   <u>Media Sales, Inc.</u>, 988 F.2d 476, 488 (3d Cir. 1993)).  If service of process is insufficient under

13   Rule 12(b)(4) or 12(b)(5), the court may dismiss an action or simply quash the service. <u>See, e.g.,</u>

14   <u>S.J. v. Issaquah Sch. Dist. No. 411</u>, 470 F.3d 1288, 1293 (9th Cir. 2006).

15   **III.   DISCUSSION**

16        **A.    Lack of Personal Jurisdiction under Rule 12(b)(2)**

17        BDB Capital, Dawson and Roter argue that the claims asserted against them should be

18   dismissed for lack of personal jurisdiction.  Since Marble Bridge does not advocate for general

19   personal jurisdiction in its opposition, what is at issue is whether this court has specific personal

20   jurisdiction over these three defendants.[3]

21        **i.    Standard for Specific Personal Jurisdiction**

22        As every law student knows, personal jurisdiction is properly exercised when the

23   defendant has "certain minimal contacts with the forum such that the maintenance of the suit does

24   not offend traditional notions of fair play and substantial justice."  <u>Data Disc</u>, 557 F.2d at 1287

25   (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1977); <u>see</u> <u>Burger King Corp. v.</u>

26

27   _____

     [3] Exchange did not join in this motion challenging personal jurisdiction, it seems.

                                              6
28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

1    Rudzewicz, 471 U.S. 462, 476 (1985).  The Ninth Circuit employs a three-part test to determine

2    whether specific jurisdiction exists:

3              (1) the non-resident defendant must purposefully direct his activities
              or consummate some transaction with the forum or resident thereof;
4              or perform some act by which he purposefully avails himself of the
              privilege of conducting activities in the forum, thereby invoking the
5              benefits and protections of its laws;

6              (2) the claim must be one which arises out of or relates to the
              defendant's forum-related activities; and
7
              (3) the exercise of jurisdiction must comport with fair play and
8              substantial justice, i.e. it must be reasonable.

9    Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

10    "The plaintiff bears the burden of satisfying the first two prongs of the test." Id.  "If the

11    plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum

12    state." Id.  But if the plaintiff succeeds on the first two prongs, "the burden then shifts to the

13    defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."

14    Id. (citing Burger King Corp., 471 U.S. at 476-78).

15              **ii.    Purposeful Availment**

16    The first prong "may be satisfied by purposeful availment of the privilege of doing

17    business in the forum; by purposeful direction of activities at the forum; or by some combination

18    thereof." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en

19    banc).  Whether a defendant's purposeful availment or direction is examined depends on the type

20    of case in which the jurisdictional issue arises. Id.

21    Marble Bridge asserts three torts in the Complaint.  In torts cases, the Ninth Circuit applies

22    "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or

23    not the actions themselves occurred within the forum." Id.  Three elements are considered: "that

24    the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum

25    state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole

26    Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

27
                                          7
28    Case No.: 5:15-cv-00177-EJD
      ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
      DISMISS AND MOTION TO QUASH

1        Looking first at BDB Capital and Dawson, Marble Bridge has identified some intentional

2    acts on their part.  In the Complaint, Marble Bridge alleges that BDB Captial and Dawson

3    participated with Exchange, Roter, Holloway and Fitzgerald in a fraudulent scheme, the goal of

4    which was to find a new factor to purchase the Liquid Capital Defendants' interest in the Nature's

5    Own receivables.  In doing so, Marble Bridge alleges, and its declarations in support of this

6    motion appear to confirm, that Dawson prepared falsified financial reports on behalf of the Liquid

7    Capital Defendants that would be used to entice an unsuspecting new factor into a buy-out deal.

8        Though they describe intentional acts, these allegations do not explain how the conduct of

9    BDB Capital and Dawson was expressly aimed at Marble Bridge, or at any California factor for

10   that matter.  "That requirement is satisfied when 'the defendant is alleged to have engaged in

11   wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum

12   state.'"  Id. (quoting Bancroft & Masters, Inc. v. August Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir.

13   2000)).  Here, there is nothing in the record which establishes that BDB Capital or Dawson knew

14   at any point that the scheme they joined had targeted a California company, that the reports

15   Dawson created would be sent to a California company in anticipation of a buy-out transaction, or

16   that the effects of their alleged wrongdoing would be felt in California.  Indeed, what Marble

17   Bridge has done is merely accuse BDB Capital and Dawson of some species of "untargeted

18   negligence," which will not suffice for specific personal jurisdiction.  See Calder v. Jones, 465

19   U.S. 783, 789 (1984).  The one allegation that does attempt to tie BDB Capital and Dawson to

20   Marble Bridge is too general too infer any particular knowledge to those defendants.  See Compl.,

21   at ¶ 24. ("Defendants misrepresented to Marble Bridge that Liquid Capital was willing to be

22   bought out by Marble Bridge because Nature's Own wanted financing well in excess of what

23   Liquid Capital wanted to provide.").[4]

24   _____

25   [4] Marble Bridge's comparison of this case to Dole Food Co. v. Watts, 303 F.3d 1104 (9th Cir.
     2002), is misplaced.  There, the record unquestionably showed the defendants "knew that Dole's
26   principal place of business was in California, knew that the decisionmakers for Dole were located
     in California, and communicated directly with those California decisionmakers."  303 F.3d at
27   1112.  No such facts are alleged as to BDB Capital and Dawson.  In fact, it seems under the

8

28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

1    Roter, however, is a different story.  Having also joined in on the scheme to defraud

2  another factor into purchasing the Nature's Own invoices, the evidence shows that he signed the

3  agreement which resulted in the Marble Bridge buy-out.  See Mot., at Ex. A.  The agreement is

4  addressed to Roter, is written on Marble Bridge's letterhead, and identifies Marble Bridge's

5  business address in California at the foot of each page.  Id.  The evidence also shows that Roter

6  made telephone calls and sent emails and facsimiles to Marble Bridge.  Thus, in contrast to BDB

7  Capital and Dawson, Roter was aware that a California factor - Marble Bridge - was the target of

8  the scheme, communicated directly with Marble Bridge to secure the deal, and then signed an

9  agreement he must have known would have a detrimental effect on Marble Bridge in California,

10  given the company's location.

11    Roter argues these contacts are insufficient for specific personal jurisdiction in California

12  because they are minimal, were not initiated by him, and were not wrongful.  These points are

13  unpersuasive.  Whether or not Roter contacted Marble Bridge first, or vice versa, is of no moment

14  under these facts, and the number of times Roter interacted with Marble Bridge is not the rubric

15  with which specific personal jurisdiction is measured.  Instead, "[i]t is the quality of these contacts

16  . . . and not the quantity, that confers personal jurisdiction over a defendant."  Brainerd v.

17  Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989).  Nor must Roter's

18  contacts with Marble Bridge have been wrongful, according to the Ninth Circuit.  Yahoo!, Inc.,

19  433 F.3d at 1207 ("In any personal jurisdiction case we must evaluate all of a defendant's contacts

20  with the forum state, whether or not those contacts involve wrongful activity by the defendant . . . .

21  we do not read Calder necessarily to require in purposeful direction cases that all (or even any)

22  jurisdictionally relevant effects have been caused by wrongful acts.").  In any event, Roter's

23  alleged participation in the scheme to defraud Marble Bridge can certainly be classified as

24  wrongful conduct.

25

United States District Court
Northern District of California

26

scenario presently alleged that neither BDB Capital nor Dawson ever learned that the scheme had
27  eventually settled on Marble Bridge for the sale.

9

28  Case No.: 5:15-cv-00177-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND MOTION TO QUASH

1    Accordingly, the court concludes that Marble Bridge has not met its burden under the

2   "effects" test as to BDB Captial and Dawson.  For them, the analysis ends here.  See

3   Schwarzenegger, 374 F.3d at 802.  At the same time, Marble Bridge has made a prima facie

4   jurisdictional showing for Roter.  Thus, the court addresses the remaining prongs with only him in

5   mind.

6                           **iii.    Claim Arising from Forum-Related Activities**

7    The second prong for specific personal jurisdiction - that the plaintiff's claim arise out of

8   or relate to the defendant's forum-related activities - requires the court to determine if the plaintiff

9   would not have been injured "but for" the defendant's conduct directed toward the plaintiff in the

10  subject forum.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).

11   Marble Bridge easily satisfies this prong.  As already stated, Roter had contacts and

12  ultimately signed an agreement with a California company he allegedly knew would sustain a

13  fraud.  But for Roter's conduct, Marble Bridge would not have been injured.  Thus, Marble

14  Bridge's claims arise out of Roter's California-related or directed activities.

15                          **iv.    Reasonableness**

16   The court must now determine whether the exercise of jurisdiction over Roter comports

17  "with fair play and substantial justice."  The burden shifts for this prong to Roter to "'present a

18  compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due

19  process."  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting

20  Burger King, 471 U.S. at 477-78).  Seven factors are considered:

> (1) the extent of the defendants' purposeful injection into the forum
> state's affairs; (2) the burden on the defendant of defending in the
> forum; (3) the extent of the conflict with the sovereignty of the
> defendant's state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence of an
> alternative forum.

Dole Food Co., 303 F.3d at 1114.

On the first factor, Roter argues he did not interject himself into California through his

10

United States District Court
Northern District of California

1    contacts with Marble Bridge and his consummation of the buy-out agreement.  This argument is

2    unconvincing because, as the court has found, Roter purposefully directed this conduct toward

3    California.  "Actions directed at a forum resident expected to cause harm in the forum constitute

4    purposeful injection."  CollegeSource, Inc., 653 F. 3d at 1080.

5         For the second factor, Roter posits inconvenience due to the distance and possible

6    differences between the American and Canadian court systems.  But these days, such protestations

7    do not carry the weight they may have in the past, when the cases cited by Roter were decided.

8    "[W]ith the advances in transportation and telecommunications and the increasing interstate

9    practice of law, any burden [of litigation in a forum other than one's residence] is substantially

10   less than in days past."  Id. (quoting Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007)).  If

11   this factor favors Roter at all, its effect is only slight.

12        On the issues of conflict and state interest, both parties recognize that "litigation against an

13   alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister

14   state."  Rano, 987 F.2d at 588 (9th Cir. 1993).  It is also true that this factor "entails an

15   examination of the competing sovereign interests in regulating" Roter's conduct.  Dole Food Co.,

16   303 F.3d at 1115.  Since all of the acts relevant to Marble Bridge's claims were undertaken by

17   Roter in Canada, that state may have some interest in adjudicating the suit.  California, on the

18   other hand, "has a strong interest in providing a forum for its residents and citizens who are

19   tortuously injured."  Id. at 1115-16.  Thus, the third factor favors Roter, but the fourth factor rather

20   obviously does not.

21        The efficiency factor is neutral when applied to this case.  While Marble Bridge's

22   witnesses are located in California, the remaining critical witnesses - such as Dawson, Holloway

23   and Roter - are located elsewhere.

24        For the sixth factor, Marble Bridge's inconvenience is entitled to little weight.  See

25   Panavision, 141 F.3d at 1324.  The court does note, however, that two other related cases are

26   already venued in this district and have been for a rather lengthy period of time.  As such, the

27

28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

_United States District Court_
_Northern District of California_

11

1    potential inconvenience to Marble Bridge stemming from litigation in multiple forums would be

2    magnified under these circumstances.

3         As to suitable alternative forums, Marble Bridge acknowledges that Colorado and Canada

4    fit that description.  But their availability does not matter in the end, because Roter has not shown

5    that California is an unreasonable forum.  See CollegeSource, Inc., 653 F. 3d at 1080.

6         Having considered the relevant factors and in light of the minimal weight of those that

7    weigh in his favor, the court finds that Roter has not made a "compelling case" against the

8    exercise of personal jurisdiction.

9                    **v.    Conclusion on Specific Personal Jurisdiction**

10        For the reasons discussed, Marble Bridge did not show that either BDB Capital or Dawson

11   purposefully directed its conduct toward California.  The 12(b)(2) motion will be granted as to

12   them, but with leave to amend.  The motion will be denied as to Roter.

13              **B.    Defective Service under Rules 12(b)(4) and 12(b)(5)**

14        Roter argues that the method utilized to serve him with process in Canada was defective

15   under the Hague Convention.  Since Roter does not actually challenge the content of the Summons

16   he received and only challenges how it was delivered, this challenge arises under Rule 12(b)(5)

17   despite the inclusion of Rule 12(b)(4) in the motion.

18        Roter was personally served in Toronto on December 15, 2014, and proof of service of

19   summons was filed in state court on December 26, 2014.  Roter provides very little detail about

20   why he believes the service was defective, and seems to have abandoned this argument altogether

21   in the reply brief.  This may be because Marble Bridge has successfully demonstrated proper

22   service in its opposition.  The court therefore finds that Roter was properly served and will deny

23   the motion under Rules 12(b)(4) and 12(b)(5).

24   **IV.    ORDER**

25        Based on the foregoing, the Motion to Dismiss for Lack of Personal Jurisdiction and

26   Motion to Quash Service of Process (Docket Item No. 8) is GRANTED IN PART and DENIED

27

28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California

1    IN PART.

2          The Motion to Dismiss is GRANTED as to BDB Capital (sued as Liquid Capital of

3    Colorado) and Dawson, and all claims against them are DISMISSED WITH LEAVE TO

4    AMEND.  The Motion to Dismiss is otherwise denied in all other aspects.

5          The Motion to Quash Service of Process is DENIED.

6          Any amended complaint filed in response to this order must be filed and served on or

7    before **October 12, 2015.**

8

9          **IT IS SO ORDERED.**

10   Dated: September 25, 2015

11   

12   EDWARD J. DAVILA
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                         13
28   Case No.: 5:15-cv-00177-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS AND MOTION TO QUASH

United States District Court
Northern District of California